FILED
2017 MAY 30 PM 3:36

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>STEPHEN CHRISTOPHER RONCA,<br><br>  Defendant. | CR No. 17CR00324<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud] |

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY-EIGHT

[18 U.S.C. § 1343]

A.  INTRODUCTORY ALLEGATIONS

1.  At all times relevant to this Indictment:

   a.  Rabobank N.A. ("Rabobank") was a bank headquartered in Roseville, California, with branches throughout California. Automatic Teller Machine ("ATM") transactions involving Rabobank accounts caused the transfer of financial information to Rabobank's computer servers in Roseville.

   b.  Heritage Oaks Bank was a bank headquartered in Paso Robles, California, with branches throughout California. Heritage

Oaks Bank outsourced its online banking functions to Q2 Holdings, Inc., which processed online funds transfers between accounts held at Heritage Oaks Bank through computer servers located in Texas.

      c.    The Chumash Casino Resort ("Chumash Casino") was located in Santa Ynez, California. ATM and point-of-sale transactions at Chumash Casino were processed through Global Payments, Inc., which processed such transactions through computer servers located in Georgia and Virginia.

      d.    K.K., a resident of San Luis Obispo, California, was the settlor and original trustee of a living trust (the "Trust").

      e.    Defendant STEPHEN CHRISTOPHER RONCA ("RONCA") was an attorney licensed to practice law in the State of California. Defendant RONCA provided legal services to K.K. as trustee of the Trust and prepared the Trust documents.

      f.    As the original trustee of the Trust, K.K. exercised control over an account for the Trust with account number ending in "953" at the Rabobank branch located at 2276 Broad Street in San Luis Obispo, California (the "Trust Account") until his death on or about March 13, 2012.

      g.    Defendant RONCA exercised control over an Interest on Lawyers Trust Account with account number ending in "123" (the "IOLTA") as well as a checking account with account number ending in "186" (the "Checking Account") at the Heritage Oaks Bank branch located at 1135 Santa Rosa Street in San Luis Obispo, California.

B.    THE SCHEME TO DEFRAUD

    2.    Beginning at a time unknown and continuing through in or about February 2014, in San Luis Obispo County, within the Central District of California, and elsewhere, defendant RONCA, knowingly and

with intent to defraud, devised, participated in, and executed a scheme to defraud victim S.K. as to material matters, and to obtain money and property from S.K. by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

C.  THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

3.  The fraudulent scheme operated in the following manner:

a.  On or about July 5, 2000, K.K. executed the original Trust documents, which defendant RONCA prepared.

b.  On or about May 8, 2008, K.K. executed an Amendment and Restatement of the Trust (the "May 2008 Amendment and Restatement"), which defendant RONCA also prepared. The May 2008 Amendment and Restatement provided that, if S.K. survived K.K., she would become the beneficiary and successor trustee of the Trust.

c.  In November 2011, K.K. sold a condominium located on Azalea Court in San Luis Obispo (the "Azalea Property") and moved into a condominium with S.K. that was located on Poinsettia Street in San Luis Obispo (the "Poinsettia Property"). The Poinsettia Property was part of the res of the Trust. After the sale of the Azalea Property, S.K. provided RONCA with cashier's checks totaling $145,000 for him to hold for her use in the IOLTA. RONCA, however, caused those funds to be transferred from the IOLTA to his Checking Account, from which he withdrew those funds and used them for his personal benefit.

d.  In January 2013, without authorization, RONCA applied for and received a personal loan using the Poinsettia Property as collateral. As a result of this loan, approximately $89,392.22 was deposited into RONCA's Bank of America checking account ending in

"753" ("BofA Account") via the transfer of financial information by wire through New York and elsewhere. RONCA used the proceeds of the loan for his personal benefit. In May 2013, RONCA sold the Poinsettia Property and used the proceeds from that sale to pay off the loan.

   e. The remaining proceeds from the sale of the Poinsettia Property were deposited into the Trust Account. By February 2014, RONCA had drained the Trust Account by making ATM withdrawals and point-of-sale purchases from casinos located in California and Nevada, by writing and depositing checks made out to himself, and by cashing checks made out to "Cash."

D. THE EXECUTION OF THE FRAUDULENT SCHEME

  4. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, transferred money from the IOLTA to the Checking Account, which transmitted or caused the transmission of financial information by means of wire communication in interstate and foreign commerce from California to Texas, and elsewhere:

| COUNT | DATE | AMOUNT |
|---|---|---|
| ONE | 5/30/2012 | $1,500 |
| TWO | 6/4/2012 | $1,000 |
| THREE | 6/5/2012 | $2,000 |
| FOUR | 6/12/2012 | $500 |

  5. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, caused money to be transferred from Comerica Bank to RONCA's BofA Account, which transmitted or caused the transmission of financial information

4

by means of wire communication in interstate and foreign commerce to New York, and elsewhere:

| COUNT | DATE | AMOUNT |
|---|---|---|
| FIVE | 1/29/13 | $89,392.22 |

6. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, withdrew money from the Trust Account at ATMs, which transmitted or caused the transmission of financial information by means of wire communication in interstate and foreign commerce at the locations specified below to California, and elsewhere:

| COUNT | DATE | AMOUNT | LOCATION OF ATM |
|---|---|---|---|
| SIX | 8/7/13 | $503 | Las Vegas, Nevada |
| SEVEN | 8/18/13 | $505.99 | South Lake Tahoe, Nevada |
| EIGHT | 9/12/13 | $505.99 | South Lake Tahoe, Nevada |
| NINE | 9/16/13 | $505.99 | South Lake Tahoe, Nevada |
| TEN | 10/24/13 | $505.99 | South Lake Tahoe, Nevada |
| ELEVEN | 12/31/13 | $505.99 | South Lake Tahoe, Nevada |

7. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, withdrew money from the Trust Account at ATMs, which transmitted or caused the transmission of financial information by means of wire communication in interstate and foreign commerce from Chumash Casino in Santa Ynez, California to Georgia and Virginia, and elsewhere:

| COUNT | DATE | AMOUNT |
|---|---|---|
| TWELVE | 5/3/13 | $403.50 |

5

| | | |
|---|---|---|
| THIRTEEN | 10/14/13 | $503.50 |
| FOURTEEN | 11/6/13 | $503.50 |
| FIFTEEN | 12/4/13 | $503.50 |
| SIXTEEN | 2/3/14 | $503.50 |

8. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, caused money to be debited from the Trust Account by making point-of-sale transactions, which transmitted or caused the transmission of financial information by means of wire communication in interstate and foreign commerce from South Lake Tahoe, Nevada, to California, and elsewhere:

| COUNT | DATE | AMOUNT |
|---|---|---|
| SEVENTEEN | 9/15/13 | $1,065 |
| EIGHTEEN | 9/15/13 | $1,065 |
| NINETEEN | 9/17/13 | $1,065 |
| TWENTY | 10/27/13 | $516.95 |
| TWENTY-ONE | 10/27/13 | $2,105 |

9. On or about the following dates, defendant RONCA, for the purpose of executing the above-described scheme to defraud, caused money to be debited from the Trust Account by making point-of-sale transactions, which transmitted or caused the transmission of financial information by means of wire communication in interstate and foreign commerce from Chumash Casino in Santa Ynez, California to Georgia and Virginia, and elsewhere:

//
//

| COUNT | DATE | AMOUNT |
|---|---|---|
| TWENTY-TWO | 5/6/13 | $619.65 |
| TWENTY-THREE | 11/20/13 | $1,080.50 |
| TWENTY-FOUR | 1/6/14 | $648.30 |
| TWENTY-FIVE | 1/21/14 | $972.45 |
| TWENTY-SIX | 1/29/14 | $972.45 |
| TWENTY-SEVEN | 2/4/14 | $540.25 |
| TWENTY-EIGHT | 2/20/14 | $540.25 |

A TRUE BILL

/S/
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

*[signature]*

LIZABETH A. RHODES
Assistant United States Attorney
Chief, General Crimes Section

ROBYN K. BACON
Assistant United States Attorney
Deputy Chief, General Crimes Section

GEORGE E. PENCE
Assistant United States Attorney
General Crimes Section